pdUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD LINDEN,

        Plaintiff,

v.

CITY OF SOUTHFIELD,
MICHAEL STORMS, SCOTT
RICKARD, PHILLIP MULLIGAN,
and JAKE KROLL,

        Defendants.

_____/

No. 20-12738

Honorable Nancy G. Edmunds

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS [85][98],
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [64],
AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION
OVER PLAINTIFF'S STATE LAW CLAIM**

Plaintiff Howard Linden, as personal representative of the estate of Timesha Beauchamp ("Timesha"), brings this civil rights action under 42 U.S.C. § 1983 against the City of Southfield and four Southfield Fire Department employees, Michael Storms, Scott Rickard, Phillip Mulligan, and Jake Kroll (the "First Responders").[1] Pending before the Court are Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 64) and Plaintiff's objections to two orders issued by Magistrate Judge David R. Grand (ECF Nos. 85, 98). Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the motion to dismiss will be decided on the briefs and without oral argument. For the reasons below, the Court OVERRULES Plaintiff's objections and AFFIRMS the Magistrate Judge's

---

[1] This case was originally assigned to the Honorable Arthur J. Tarnow but was reassigned to the Honorable Nancy G. Edmunds pursuant to Administrative Order 22-AO-007 on February 16, 2022.

1

rulings. The Court also GRANTS Defendants' motion to dismiss as to Plaintiff's federal claims and DECLINES to exercise supplemental jurisdiction over Plaintiff's state law claim.

I.  **Background[2]**

   A.  **Overview**

This lawsuit arises out of tragic events that took place on August 23, 2020, when the First Responders responded to a 911 call for a medical emergency being experienced by Timesha. The First Responders provided some medical care, declared—over Timesha's family's repeated protestations and apparent medical contraindications—that Timesha had passed away, and left the scene. Almost three hours later, Timesha was placed in a body bag and transported to a funeral home. When a funeral home employee unzipped the body bag, however, Timesha was alive and gasping for air. Timesha was then rushed to a nearby hospital. She was still in the hospital when her then-guardian, Erica Lattimore, filed this action on October 8, 2020. Sadly, Timesha passed away ten days later.

   B.  **Factual Background[3]**

On August 23, 2020, the First Responders responded to a 911 call from the home of Ms. Lattimore. The call was placed at about 7:27 a.m. because Ms. Lattimore's daughter, Timesha, who suffered from serious medical conditions, was "not as responsive."[4] The First Responders arrived at 7:34 a.m. and started CPR, but at 8:03 a.m., they discontinued CPR and declared Timesha deceased. They did so despite the fact that Timesha allegedly

---

[2] Magistrate Judge Grand aptly set forth the background of this case in his orders. (ECF Nos. 78, 97.) The Court repeats that information here to the extent needed.

[3] These facts are taken from the second amended complaint (ECF No. 55), which is the operative complaint in this case.

[4] Timesha was a twenty-year old with cerebral palsy.

2

"still had air movement in her lungs" and a "rhythm change" to her blood pressure and the cardiac monitor showed "electrical activity" and "normal levels of exhaled CO2."

Southfield police officers arrived at approximately 8:07 a.m. Two minutes later, one of the First Responders called Dr. Darr, a doctor at Ascension Providence Southfield Hospital, to obtain permission to discontinue resuscitative efforts, even though those efforts had already ceased. The First Responder advised Dr. Darr that Timesha "did not have any rhythm change and was asystole throughout the entire resuscitation, which was untrue."

As the First Responders were placing their supplies into the ambulance, a family member called out to them that Timesha was breathing and had a pulse. Two of the First Responders re-entered the home and placed a monitor on Timesha, which "clearly showed that [she] still had organized electrical activity indicating she was not dead." But the First Responder advised "the family that Timesha's body was reacting to medication that was given to her, and that she was dead." The First Responders then left the residence.

As the First Responders "proceeded to leave the driveway, a Southfield police officer stopped [them] as the family was stating Timesha was still breathing." They again re-entered the home, and a family member "informed them that she could feel a pulse and that Timesha had gasped for air." Again, the First Responders advised the family "that there would be chest movement due to the medication given but that Timesha was in fact dead." They provided no further medical care to Timesha. At approximately 8:36 a.m., a Southfield police officer called the Oakland County Medical Examiner's office to report Timesha's death, and the First Responders then left the scene.

At about 11:25 a.m., a funeral home representative arrived to pick up Timesha's body. He questioned whether Timesha was deceased because he observed her chest

moving. Ms. Lattimore informed the representative that the First Responders had told her that Timesha's body would move due to the medication administered. Timesha's body was placed into a body bag and transported to the funeral home. There, the representative and an embalmer "unzipped the body bag and saw Timesha with her eyes open, her chest moving up and down, and gasping for air." The embalmer called 911. Upon their arrival to the funeral home, Detroit EMS responders found that Timesha had a heart rate of "93 bpm" and a blood pressure reading of "115 over palp." Timesha was admitted to Sinai Grace Hospital, where doctors confirmed that she "was very much alive but suffering from a significant anoxic brain injury and placed on a ventilator in the medical intensive care unit."

The First Responders uploaded a report about the incident that evening but then allegedly "altered the information provided" the following morning. Timesha was moved to Children's Hospital in Detroit on August 30, 2020. She underwent a tracheostomy on September 23, 2020 due to "requiring the assistance of a ventilator for a long term." Timesha died on October 18, 2020 allegedly "as a direct result of each and every one of [Defendants'] actions and failures to act."

### C. Procedural Background

The initial complaint filed by Ms. Lattimore asserted a claim against the First Responders for violation of Timesha's purported "right to adequate and sufficient medical care and/or treatment" under the Fourteenth Amendment of the United States Constitution (Count I) and a *Monell* claim against the City of Southfield for its alleged failure to properly train and/or supervise the First Responders (Count II). (ECF No. 1.) On the same day the action was commenced, a first amended complaint was filed, adding state law claims of gross negligence (Count III) and intentional infliction of emotional distress ("IIED") (Count

IV). (ECF No. 2.) After Timesha passed away, Plaintiff filed a motion for leave to file a second amended complaint. (ECF Nos. 13, 23.) That complaint added allegations of wrongful death and eliminated the IIED claim. On March 17, 2021, leave was granted by Magistrate Judge Grand and the second amended complaint with Counts I-III was filed. (ECF Nos. 54, 55.)

Prior to entry of the order granting leave to amend, Defendants filed a motion for judgment on the pleadings, arguing they are entitled to qualified immunity because "[i]t is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need" under *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). (ECF No. 50.) In the order granting leave, Magistrate Judge Grand noted that filing the amended complaint would moot that motion. (ECF No. 54, PageID.1674 n.2.) So, Defendants later withdrew their motion and filed the motion to dismiss presently before the Court that essentially repeats the same arguments. (ECF Nos. 62, 64.)

Defendants had also filed a motion to stay all discovery pending resolution of the qualified immunity issue raised in the motion for judgment on the pleadings. (ECF No. 51.) On April 29, 2021, Magistrate Judge Grand entered an order granting the motion to stay discovery because he found "serious questions exist as to whether the facts alleged in the operative complaint could support a violation of a clearly established constitutional right, and thus whether the First Responders are entitled to qualified immunity" and that "Defendants are entitled to a stay of discovery until this qualified immunity issue is decided." (ECF No. 78, PageID.2244.) Also before the Court is Plaintiff's objection to that order. (ECF No. 85.) Defendants have responded to the objection. (ECF No. 89.)

5

Following issuance of the order staying discovery, Plaintiff filed a motion for leave to file a third amended complaint to add a separate count under the "state created danger" exception to the rule set forth in *Jackson*. (ECF No. 81.) Plaintiff implied that he filed this motion because Magistrate Judge Grand "indicated that a claim under the State Created Danger exception was not pled as a standalone count." (*Id.* at PageID.2261.) In an order issued on January 26, 2022, Magistrate Judge Grand noted he had stayed discovery not because of a label but because Plaintiff had not pled sufficient facts to state a claim under the exception. (ECF No. 97.) Magistrate Judge Grand found that the proposed third amended complaint also failed to plead sufficient facts to state such a claim and denied the motion for leave. Plaintiff's objections to that order and Defendants' response to the objections are also before the Court. (ECF Nos. 98, 99.)

## II.     Plaintiff's Objections to the Order Denying Leave to Amend [98][5]

Magistrate Judge Grand concluded amendment would be futile because Plaintiff's proposed third amended complaint does not plead sufficient facts to state a claim under the state created danger doctrine. Plaintiff makes two objections to this conclusion.

### A.     Appropriate Standard of Review

The parties set forth different standards of review. Under Federal Rule of Civil Procedure 72(a), a district judge reviewing objections to an order issued on a non-dispositive matter that was referred to a magistrate judge may "modify or set aside any part of the order that is clearly erroneous or contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). In contrast, when considering objections to a report and recommendation issued by a

---

[5] The Court addresses these objections first because an amended complaint would moot the pending motion to dismiss.

6

magistrate judge on a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B).

Plaintiff cites to the de novo standard that applies when a district judge reviews a report and recommendation, but, as Defendants note, Magistrate Judge Grand issued an order, not a report and recommendation. This was consistent with the order of reference (ECF No. 82) as well the text of the Federal Magistrates Act, which does not list a motion to amend among the motions that a magistrate judge may not decide. *See* § 636(b)(1)(A). The Court notes, however, that some courts have questioned whether the denial of leave to add a claim should be considered dispositive. *See, e.g.*, *Ellis v. Prospect Airport Servs.*, No. 17-13852, 2019 U.S. Dist. LEXIS 53913, at *11 (E.D. Mich. Mar. 29, 2019). Without deciding this issue, the Court will apply the de novo standard here because the underlying issues are intertwined with the arguments raised in Defendants' motion to dismiss and it would be inefficient to address these arguments twice.

**B.   Analysis**

As a threshold matter, Magistrate Judge Grand correctly noted that a party does not have a constitutional right to competent medical assistance or rescue services. (*See* ECF No. 97, PageID.2556-57 (citing *Jackson*, 429 F.3d at 590 (citing *DeShaney*, 489 U.S. at 196))). The state created danger doctrine, however, is a narrow exception to the general rule. *See Jackson*, 429 F.3d at 591. This doctrine generally "applies when the state takes an affirmative act that increases the victim's risk of harm from private acts of violence." *Sexton v. Cernuto*, 18 F.4th 177, 186 (6th Cir. 2021) (internal quotations and citation omitted). The Sixth Circuit has also applied the doctrine to hold that the state may have a

constitutional obligation "to refrain from arbitrarily thwarting private rescue efforts if no state-sponsored alternative is available." *See Beck v. Haik*, No. 99-1050, 2000 U.S. App. LEXIS 26768, at *17 (6th Cir. Oct. 17, 2000). Magistrate Judge Grand found that Plaintiff's proposed third amended complaint fails to allege a claim under either approach. Plaintiff objects to both of these findings.

### 1. The Court Agrees that Plaintiff Cannot Satisfy the "Private Act of Violence" Requirement.

The Magistrate Judge underwent a thorough analysis of Sixth Circuit cases dealing with the state created danger doctrine under the first approach to show they have all imposed a "private act of violence" requirement, even in cases where the underlying facts did not involve violence at all. (*See* ECF No. 97, PageID.2558-65.) The Magistrate Judge found Plaintiff's claim futile under this approach because there are no allegations that the First Responders' conduct exposed Timesha to private acts of violence.

Plaintiff does not dispute the private act of violence requirement but instead takes issue with the analogy to *Willis v. Charter Twp. of Emmett*, 360 F. App'x 596 (6th Cir. 2010), and states that the Magistrate Judge did not cite a case in which a court has found "the premature preparation of a person for funeral processing" not a private act of violence.[6]

In *Willis*, 360 F. App'x at 598, the decedent was involved in a multiple-vehicle accident which inflicted serious injuries on him and left him pinned inside of his truck. One

---

[6] As noted in the order denying leave, Plaintiff initially attempted to circumvent the private act of violence requirement by advocating for a more general application of the state created danger doctrine, and it was the Magistrate Judge who, on his own initiative, "considered whether the fact that Timesha remained at home for almost three hours after the First Responders left the scene, and was then placed in a body bag, satisfies the private act of violence requirement." (ECF No. 97, PageID.2565-66.)

of the responders to the scene, who was both a firefighter and a police officer, concluded that the decedent did not survive the accident based on his understanding that the decedent did not have a pulse and the extent of the damage to the truck. *Id.* He informed another officer that the decedent was dead. *Id.* Another responder was similarly told that the decedent did not have a pulse and unsuccessfully tried to locate a pulse himself. *Id.* He told others that he was unable to find a pulse. *Id.* Based at least partially on these statements, everyone arriving at the scene assumed that the decedent was dead and paramedics placed a white sheet over the truck and called an emergency-room physician who pronounced the decedent dead. *Id.* at 598-99. Around two hours later, when the responders went to remove the decedent from the wreckage so the truck could be towed, they discovered that he was still breathing. *Id.* at 599. The decedent was then transported to the hospital where he later died. *Id.* The Sixth Circuit held that even if the responders' conduct "blurred the line between affirmative acts and the failure to act," the plaintiffs still failed to satisfy the first prong of the state created danger exception because the responders did not make the decedent "less safe by increasing the risk that he would be exposed to private acts of violence." *Id.* at 601.

The Court finds the analogy between this case and *Willis* fitting. In both cases, the defendants responded to an emergency and erroneously determined and informed others that an individual had died. In *Willis*, the Sixth Circuit acknowledged that "it seem[ed] certain that [the decedent's] condition deteriorated" during the time he was left untreated and yet rejected the notion that this extended period of time or "the jostling of the cab of his pickup when it was secured for towing satisfy the private acts of violence requirement." *Id.* at 601-02. In so doing, the court noted that the decedent's injuries were caused by the car

9

accident that occurred prior to the responders' arrival. *Id.* at 602. Similarly, here, Timesha was experiencing a medical emergency prior to the First Responders' arrival. Even though she was left untreated and prematurely prepared for funeral processing after the First Responders declared her deceased, to hold that these circumstances amount to private acts of violence would turn the general rule—that state actors have no constitutional duty to render competent medical services or rescue services—on its head. *See id.*; *see also Peete v. Metro. Gov't of Nashville & Davidson County*, 486 F.3d 217, 223 (6th Cir. 2007) (holding that the defendants' actions of restraining the seizure victim without leaving a clear passage for him to breathe did not expose him to private acts of violence); *Jackson*, 429 F.3d at 591 (holding that the defendants' actions of moving the gunshot victim to a location where it was less likely he would receive aid did not increase the risk he would be exposed to private acts of violence); *cf. Nelson v. City of Madison Heights*, 845 F.3d 695, 703 (6th Cir. 2017) (holding a jury could find that the officer's act of disclosing an informant's name to a drug dealer's companion increased her risk of exposure to private acts of violence). Thus, Plaintiff's proposed third amended complaint does not state a claim under the first approach to the state created danger exception.

    **2.    The Court Agrees that Plaintiff Cannot State a Constitutional Claim for Cutting Off or Preventing Further Private Medical Aid.**

As noted by Magistrate Judge Grand, the second approach to the state created danger exception stems from the Sixth Circuit's unpublished opinion in *Beck*, 2000 U.S. App. LEXIS 26768. There, local officials prohibited a qualified, private dive team from trying to rescue a man who jumped or fell into a river and instead waited thirty-five minutes for the county's dive team to arrive. *Id.* at *4-6. When the county team found the man, he was

10

already dead. *Id.* at *6. Resuscitation attempts failed, but there were indications that had his body been recovered sooner, the attempts may have been successful. *Id.* at *6-7. The Sixth Circuit reversed the district court's grant of summary judgment in favor of the county and city on the claim that they arbitrarily prohibited private rescue attempts without providing a meaningful alternative and remanded the case for further proceedings because the "claim might prove to be meritorious." *Id.* at *11-13. The Magistrate Judge found that here Plaintiff did not plead sufficient facts to support the allegation that the First Responders prevented Timesha from receiving private aid.

Plaintiff argues that the Magistrate Judge improperly suggests that there must be an allegation that private rescue was attempted to sustain a claim under this theory. More specifically, Plaintiff avers that because the erroneous information provided by the First Responders—that Timesha was deceased and did not need medical care—dissuaded the family from even attempting to obtain private aid, the allegations here are sufficient to support a claim under *Beck*. The Court disagrees.

The possible claim set forth in *Beck* is narrow. In *Jackson*, the Sixth Circuit reasoned as follows:

> Jackson cannot state a constitutional claim based on cutting off state aid because state actors do not have a general duty to render aid. But a constitutional claim may be premised on state action "cutting off" private sources of rescue without providing an adequate alternative. For example, dictum in *Beck* suggests that a valid constitutional claim might be made when police threatened to arrest private search and rescue divers at the scene of a drowning, and then failed to provide adequate state divers. Jackson alleges only one relevant fact to this inquiry: the EMTs put decedent in an ambulance. The EMTs did not discourage others from entering the ambulance. All evidence indicates decedent was free to leave (or be removed from) the ambulance. Furthermore, there is no evidence that any private rescue was available or attempted. No set of facts consistent with the allegations shows that the EMTs interfered with private aid. Thus, Jackson does not allege

11

> sufficient facts to support a claim for a constitutional violation based on cutting off private aid.

*Jackson*, 429 F.3d at 591-92 (internal citations omitted). The Sixth Circuit has also distinguished *Beck* where no private rescue attempts were made "because everyone at the scene was under the [erroneous] impression that [the decedent] was dead," *see Willis*, 360 F. App'x at 603, where "there was no comparable private rescuer on hand," *see Tanner v. County of Lenawee*, 452 F.3d 472, 481 (6th Cir. 2006), and even where there was a potential private rescuer but he was not a trained driver and officers "knew nothing" of his qualifications, *see Hermann v. Cook*, 114 F. App'x 162, 166 (6th Cir. 2004).

Here, unlike in *Beck*, where private drivers were threatened with arrest if they attempted to enter the water, there is no allegation that the First Responders disallowed family members or other sources of private aid to render medical care. In fact, the First Responders were summoned twice after they had initially left because family members observed signs of life on Timesha. Despite the First Responders providing misinformation to Dr. Darr and erroneously insisting that Timesha was deceased, family members could have sought help from private sources but did not do so. Thus, Plaintiff's proposed third amended complaint does not state a claim for a constitutional violation based on cutting off private aid under *Beck* and its progeny.

Finally, Plaintiff argues that the Magistrate Judge improperly applied a Rule 56, rather than Rule 12(b)(6), standard. But the Court finds that the Magistrate Judge employed the correct standard and agrees that even if all the allegations in the proposed third amended complaint are taken as true and in the light most favorable to Plaintiff, Plaintiff does not state a claim under the state created danger doctrine. And to the extent Plaintiff

12

takes issue with the reasoning that Timesha was no less safe after the First Responders misinformed Dr. Darr about her condition than she was before they called him, the Court notes that this inquiry relates to whether the state actors' behavior amounts to affirmative conduct that either created or increased the risk of harm to which the victim was exposed. *See Koulta v. Merciez*, 477 F.3d 442, 445-46 (6th Cir. 2007). And here, as discussed above, Timesha was experiencing a medical emergency prior to the First Responders' arrival and was not exposed to private acts of violence as a result of their actions.

In sum, while the factual allegations set forth in the third amended complaint are tragic, the Court agrees they are insufficient to support a claim under the state created danger doctrine. Thus, the Court overrules Plaintiff's objections to the Magistrate Judge's order denying leave to amend and affirms that order.

### III. Defendants' Motion to Dismiss under Rule 12(b)(6) [64]

In their motion to dismiss, Defendants assert they are entitled to qualified immunity because no constitutional violation occurred. In response, and in what appears to be a concession that the First Responders' alleged failure to render appropriate medical care does not constitute a constitutional violation, Plaintiff argues that the complaint "adequately allege[s] facts under the state-created danger exception." (ECF No. 76, PageID.2207.) However, after Magistrate Judge Grand expressed his skepticism to this argument, (*see* ECF No. 78), Plaintiff filed his motion for leave to file a third amended complaint to include additional facts to support a claim under this exception. But, as discussed above, even with the additional allegations, Plaintiff does not state such a claim. Thus, the Court overruling Plaintiff's objections to the Magistrate Judge's order denying leave to amend

13

resolves Defendants' motion to dismiss in large part. To the extent there are any outstanding issues, they are discussed below.

### A.  Legal Standards

#### 1.  Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. "[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barney v. PNC Bank*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

#### 2.  Qualified Immunity Generally

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (internal quotations and citation omitted). Qualified immunity is a threshold question the court is required to rule on "early in the proceedings so that the costs and expenses of trial are

Case 2:20-cv-12738-NGE-DRG ECF No. 100, PageID.2689 Filed 07/05/22 Page 15 of 17

avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Giley*, 500 U.S. 226, 232 (1991). If no constitutional right was violated, there is no need for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "Reasonableness" is a question of law to be decided by the trial court.

### B. Federal Claims

The essence of Plaintiff's due process claim against the First Responders is that they provided incompetent medical aid. But this is an insufficient basis upon which to bring a constitutional claim. *See Jackson*, 429 F.3d at 590. And, as found above, Plaintiff does not state a claim under the state created danger exception. Thus, the First Responders are entitled to qualified immunity.[7] *See Saucier*, 533 U.S. at 201. And because Plaintiff has not stated a constitutional claim against the First Responders, his claim against the

---

[7] Even if Plaintiff had stated a claim for a violation of Timesha's constitutional rights, those rights were not clearly established. With regard to the first theory, as Plaintiff himself notes, there is no caselaw that stands for the proposition that "the premature preparation of a person for funeral processing" constitutes a private act of violence for purposes of the state created danger doctrine. Nor is there a case that would make it clear to a reasonable officer that he or she may be held liable under a thwarting private aid theory for conduct similar to that alleged here. In fact, *Beck* "appears to be the only case from the Sixth Circuit Court of Appeals which [h]as ever held a police officer liable for preventing a private rescue," *see Pierce v. Springfield Twp.*, No. 1:11-cv-847, 2013 U.S. Dist. LEXIS 187119, at *43 (S.D. Ohio May 21, 2013), and the facts there were markedly different.

15

City of Southfield for its alleged failure to properly train and discipline the First Responders likewise fails. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation."). Accordingly, both of Plaintiff's federal constitutional claims are dismissed with prejudice.

### C. State Law Claim

Because the Court is dismissing Plaintiff's federal constitutional claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ."). Thus, Plaintiff's gross negligence claim is dismissed without prejudice.

### IV. Plaintiff's Objection to the Order Granting the Motion to Stay Discovery [85]

The dismissal of Plaintiff's claims renders Plaintiff's objection to the Magistrate Judge's order granting Defendants' motion to stay discovery moot. Thus, the Court overrules the objection and affirms the Magistrate Judge's underlying order.

### V. Conclusion

For the foregoing reasons, the Court OVERRULES Plaintiff's objections (ECF Nos. 85, 98) and AFFIRMS the Magistrate Judge's rulings (ECF Nos. 78, 97). The Court also GRANTS Defendants' motion to dismiss (ECF No. 64) as to Plaintiff's federal claims and DECLINES to exercise supplemental jurisdiction over Plaintiff's state law claim.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
Dated: July 5, 2022          United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 5, 2022, by electronic and/or ordinary mail.

s/Lisa Bartlett<br>Case Manager